UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EVERARD F. KING,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LINDA S. McMAHON,[1]<br>Commissioner of Social<br>Security,<br><br>　　　　Defendant. | No. CV-06-0086-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 13, 16). Attorney D. James Tree represents Plaintiff; Assistant United States Attorney Pamela DeRusha and Special Assistant United States Attorney David Burdett represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for

---

[1] As of January 20, 2007, Linda S. McMahon succeeded Defendant Commissioner Jo Anne B. Barnhart as Acting Commissioner of Social Security,. Pursuant to FED. R. CIV. P. 25(d)(1), Commissioner Linda S. McMahon should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. 405 (g).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  - 1

Summary Judgment and remands the matter to the Commissioner for additional proceedings pursuant to sentence four of 42 U.S.C. 405(g).

Plaintiff was 63 years old at the time of the administrative hearing. (Tr. 18.) He previously filed applications for disability benefits in 1975, 1993, and 1999, which were denied and not appealed. There was no request to reopen those decisions. (Id.) Plaintiff re-filed applications for disability benefits and for Supplemental Security Income benefits on April 17, 2002, alleging disability as of March 1, 2001, due to emphysema, heart murmur, chronic obstructive pulmonary disease (COPD) and supraventricular tachycardia (SVT). (Tr. at 57, 110, 268.) At the time of the hearing, his medications included blood pressure medicine, Ramipril for his heart, prescription strength ibuprofen, reflux medicine (ranitidine), Zoloft, Combivent and albuterol for COPD. (Tr. 291-92.) Plaintiff had a ninth-grade education and past relevant work as a long haul truck driver for over 16 years. (Tr. 79, 280.) Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge (ALJ) Verrell Dethloff. On January 24, 2005, the ALJ denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ found Plaintiff was insured for benefits through the date of the decision. At step one, he found Plaintiff had not engaged in substantial gainful activity. He determined Plaintiff had the impairments of alcoholism, hypertension, COPD, occasional

back pain and a history of tachycardia.[2] (Tr. at 23.) At step three he found, "[t]he claimant does not have any impairments or impairments that significantly limit his ability to perform basic work-related activities; therefore, the claimant does not have a severe impairment." (Tr. 24.) He concluded Plaintiff was not disabled at any time through the date of the decision. (Id.)

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ erred when he (1) denied Plaintiff's claim at step two, and (2) failed to fully develop the record as to Plaintiff's impairments.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial

---

[2] Tachycardia is the "rapid beating of the heart, usually applied to rates of 100 beats per minute." *Stedman's Medical Dictionary*, (25th ed. 1990). Supraventricular tachycardia (SVT) is a general term that "describes a number of different arrhythmias of the heart, each with a different mechanism of impulse maintenance." *Wikipedia Encyclopedia,* found at www.en.wikipedia.org. Symptoms include dizziness or fainting, shortness of breath, anxiety and weakness in the legs. *Id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3

evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT   - 4

licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**STEP TWO**

At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. §§ 404.1529, 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be "non-severe" *only* when evidence establishes a "slight abnormality" that has "no more than a *minimal effect* on an individual's ability to work." *Id.* (*citing Social Security Ruling (SSR) 85-28*). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C.

§ 423(d)(2)(B)(Supp. III 1991).  The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims.  *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987).

The adjudicator's role at step two is further explained by *SSR* 85-28:

> A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities; thus, an assessment of function is inherent in the medical evaluation process itself. At the second step of sequential evaluation, then, medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities.
>
> . . .
>
> If . . . evidence shows that the person cannot perform his or her past relevant work because of the unique features of that work, a denial at the "not severe" step of the sequential evaluation process is inappropriate. The inability to perform past relevant work in such instances warrants further evaluation of the individual's ability to do other work considering age, education and work experience.

*SSR* 85-28.

Here, the ALJ found Plaintiff's significant impairments of alcoholism, hypertension, chronic obstructive pulmonary disease, back pain and a history of tachycardia, alone or in combination, did not cause more than minimal limitations in his ability to work. (Tr. 23.)  The ALJ rejected treating physician's opinions that the Plaintiff's condition caused marked and severe limitations; however, the evidence is sufficient to satisfy the "*de minimis*" threshold at step two.  *Webb v. Barnhart*, 433 F.3d 683, 687 (2005).  Further, the Ninth Circuit has held that where the objective evidence is incomplete, the ALJ has a duty to supplement the record before rejecting a claimant's application so early in the evaluation

process. (Id.)

**A.  Medical Evidence**

In a disability proceeding, the treating physician's opinion is given special weight because of his familarity with the claimant and the physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.

Uncontradicted, objective medical evidence clearly shows Plaintiff's treating physicians diagnosed SVT and COPD, serious medical conditions that required treatment, including medication. Plaintiff was diagnosed with SVT and alcohol dependence by the emergency room physician at Phoenix Memorial Hospital 1998. (Tr. 34-37.) Reports from the CHAS clinic in Spokane, Washington, dated April to May 2001, indicate medical providers assessed Plaintiff with SVT, alcohol abuse and hypertension. (Tr. 236-42.) Plaintiff was treated with prescribed medications. At the time of his May 2001 exam, Plaintiff was not experiencing significant SVT symptoms; however, the medical provider warned him of the necessity of going to ER if his symptoms worsened. (Tr. 242.)

In January 2002, Plaintiff was seen at the Pasco, Washington, Community Health Center by Eduardo Vides, M.D. Dr. Vides opined Plaintiff suffered from SVT (a severe impairment), left hip pain, COPD and a superior mediastinal mass (a severe impairment) that

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  - 7

needed further diagnostic tests. (Tr. 232.) He noted on the report that Plaintiff's SVT condition could cause "sudden death." (Tr. 233.) No evidence of record contradicts this opinion.

In February and March 2002, Plaintiff was seen at the Southwest Washington Medical Center emergency room in Vancouver, Washington, where a medical history of SVT, hypertension, pulmonary disease, alcohol abuse and smoking were noted. Plaintiff was treated with medication for hypertension and SVT. (Tr. 164, 166-67, 182.) In April 2002, Plaintiff was seen at Central Washington Hospital (Wenatchee) emergency room for SVT episodes that resolved themselves; the attending physician noted high blood pressure and alcohol intoxication. (Tr. 192-93.) Plaintiff was advised to return to detox with his blood pressure medicine. (Tr. 199.)

Vivek Shah, M.D., treated Plaintiff at the Yakima, Washington, Health Center from August 17, 2002, to July 29, 2004. (Tr. 212-213, 243-264.) Clinical notes indicate an ongoing treatment relationship in which Dr. Shah counseled Plaintiff on depression, the need to stop smoking and maintain his alcohol abstinence. (Tr. 213-14.) Plaintiff was being treated for hypertension, COPD,[3] SVT and depression with a variety of medicines, some of which had caused problems in combination. (Id.) Plaintiff reported no drinking for the last 15 months. He did not have a stable residence. (Tr. 214.) Plaintiff reported having SVT attacks "about once a week." Dr. Shah advised him to go to ER immediately if he experienced shortness of breath, chest pain or diaphoresis. (Tr. 258.)

---

[3] Pulmonary tests indicated mild obstructive impairment. (Tr. 216.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

In September 2002, Plaintiff reported a flare up of COPD due to wildfires in the area. Dr. Shah treated him with medication. (Tr. 257.) In December 2002, Dr. Shah assessed Plaintiff with moderate impairments due to depression and hypertension, and marked impairment due to his COPD. (Tr. 230.) He opined Plaintiff should be limited to a sedentary level of exertion. (Tr. 213.) From May 2003 to August 2004, Dr. Shah treated Plaintiff for hypertension, depression and respiratory problems. (Tr. 251-55.) In July 2004, Plaintiff reported episodes of SVT which he was able to resolve by medically recommended methods.[4] (Tr. 250.)

An attempt to complete a residual functional capacity assessment in September 2002, by agency physician George Rodkey, M.D., was unsuccessful due to Plaintiff's failure to attend the assessment. (Tr. 209.) There are no other agency assessments in the record for the claimed period of disability.

The regulations reflect "[g]reat care should be exercised in applying the not severe impairment concept." *SSR* 85-28. Recognizing the narrow construction of the severity regulation, the Ninth Circuit has held that unless there is affirmative evidence of malingering, an ALJ's reasons for rejecting a claimant's allegations at step two must meet the "clear and convincing" standard, when balanced against the treating physician opinions, objective tests and Plaintiff's subjective complaints. *Webb*, 433 F.3d at 687; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here,

---

[4] Plaintiff explained at the hearing that to stop his rapid heartbeat, he was instructed by his doctor to go to the toilet and bear down.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

there is no evidence of malingering. Plaintiff testified that he stopped driving trucks due to pain and arthritis in his back and knees. He stated the last time he was driving a truck, he fell asleep and ran into a ditch, and he was "worn out." (Tr. 281, 291.) He testified he was experiencing SVT attacks and dizziness almost every day over the last few weeks. (Tr. 285.) As noted above, to stop the rapid heart beats, Plaintiff must have access to a toilet where he can bear down.

The ALJ's reliance on Plaintiff's earnings report and inability to completely stop smoking as bases for rejecting this testimony is insufficiently "clear and convincing" to discredit Plaintiff's complaints and allegations at step two. (Tr. 21-22.) Crediting the medical opinions that Plaintiff suffered SVT, Plaintiff's testimony, his documented complaints of dizziness and SVT episodes, and the ALJ's finding that Plaintiff's SVT was a nocturnal affliction, the evidence is not conclusive that Plaintiff can perform his past work as a long haul truck driver.[5] Without clear and convincing evidence that Plaintiff could perform his past work, denial of benefits at step two is inappropriate. *SSR 85-28.*

**B.   Development of the Record**

The ALJ's duty to supplement the record is triggered by ambiguous evidence or when the record is inadequate to properly evaluate the evidence. *Mayes v. Massanari*, 276 F.3d 453, 4509-60 (9th Cir 2001) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th

---

[5] According to the DICTIONARY OF OCCUPATIONAL TITLES *(DICOT)*, Tractor-Trailer Truck Driver (904.383-010) is classifed as medium work. DICOT, 4th ed., revised 1991.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  -  10

Cir. 2001)). As noted by the ALJ, the reasons for Dr. Shah's opinion that Plaintiff was disabled were ambiguous. (Tr. 22.) The evidence also establishes Plaintiff was being treated by a variety of prescribed medications. There is no testimony or report explaining the purpose of specific medications and what, if any, the combined side effects had on Plaintiff's functioning. Further, the ALJ did not order supplemental examinations from cardiac or pulmonary specialists or use a medical expert to evaluate the severity or limitations caused by these conditions separately or in combination. Although a severity assessment by agency physicians was attempted in September 2002, no evidence was obtained. (Tr. 209.) Where additional evidence is needed to determine the limitations caused by an impairment, the ALJ should order additional consultative examinations. 20 C.F.R. §§ 404.1527(c)(3), 416.1527(c)(3); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)(to assure claimant's interests are considered, special duty exists to fully and fairly develop record). Without additional evidence, a finding at step two of "not disabled" is error. (Tr. 22.) Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 13)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to 42 § U.S.C. 405(g).

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 16)** is **DENIED**.

3. Application for attorney fees may be made by separate motion.

The District Court Executive is directed to file this Order and

1  provide a copy to counsel for Plaintiff and Defendant.  The file
2  shall be **CLOSED** and judgment entered for **Plaintiff**.
3       DATED January 29, 2007.
4
5                    S/ CYNTHIA IMBROGNO
                 UNITED STATES MAGISTRATE JUDGE
6